UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| RONALD E. ROUSSEAU,<br><br>Petitioner,<br><br>vs.<br><br>JUDGE KIMBERLY CRAVEN, IN HER OFFICIAL CAPACITY AS CRST ATTORNEY GENERAL; AND BRENDA CLAYMORE, CHIEF JUDGE OF THE CRST; IN OFFICIAL CAPACITY;<br><br>Respondents. | 3:25-CV-03005-RAL<br><br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING PETITION FOR LACK OF JURISDICTION |

Ronald E. Rousseau filed a petition[1] for writ of habeas corpus under 25 U.S.C. § 1303 challenging his tribal conviction against numerous respondents including the Cheyenne River Sioux Tribe (CRST) Attorney General Kimberly Craven and the Chief Judge of the CRST, now Brenda Claymore.[2] Doc. 9-1. After this Court adopted an earlier report and recommendation and dismissed Rousseau's non-habeas claims without prejudice to refiling in a separate action, Doc.

---

[1] Rousseau originally filed his petition, Doc. 1, in the District of North Dakota, but Judge Daniel Traynor transferred the case to the District of South Dakota, Doc. 14. In this Court's previous opinion and order on a previous report and recommendation, this Court allowed Rousseau to amend his petition. Doc. 28 at 5. Therefore, Rousseau's Second Amended Petition, Doc. 9-1, is the operative petition filed. This petition was ultimately stayed by Judge Moreno before the CRST Court of Appeals' decision in December 2025. Docs. 39, 64-3. Rousseau has attached a proposed amended petition to his motion to amend as the original tribal conviction challenged has been amended on appeal. Docs. 55, 55-1.

[2] Brenda Claymore was substituted as a party in this case for Margaret Egan after Egan's contract and tenure ended on July 31, 2025. See Doc. 56 at 2.

1

28, Magistrate Judge Mark A. Moreno granted the remaining Respondents' motion to stay the case until Rousseau's appeal to the CRST Court of Appeals was resolved, Docs. 37, 39. While this case was stayed, the CRST Court of Appeals concluded that the Tribe had not met its evidentiary burden to convict Rousseau of elder abuse/aggravated assault, reduced Rousseau's conviction to simple assault, and directed the trial court to modify the judgment. Doc. 64-3 at 21. The CRST trial court then entered an amended order and judgment, and, given that Rousseau's original probationary sentence had been completed, the trial court did not impose any additional terms or conditions for the simple assault conviction. Doc. 64-4 at 1.

As Rousseau has not demonstrated "a severe actual or potential restraint on liberty" resulting from his simple assault tribal conviction as required under § 1303, this Court lacks jurisdiction to review Rousseau's petition. See Nygaard v. Taylor, 563 F. Supp. 3d 992, 1012 (D.S.D. 2021) (citing Jeffredo v. Macarro, 599 F.3d 913, 919 (9th Cir. 2010); Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 880 (2d Cir. 1996); Stymiest v. Rosebud Sioux Tribe, No. 14-3001, 2014 WL 1165925, at *2 (D.S.D. Mar. 21, 2014)). Therefore, this Court adopts Judge Moreno's Report and Recommendation, Doc. 68, denies Rousseau's motion to amend and motion to strike, grants Respondents' motion to dismiss, and dismisses the petition for lack of subject matter jurisdiction.

## I.    Factual and Procedural Background

In Rousseau's Second Amended Petition (henceforth, the petition), Rousseau challenges the constitutionality of his tribal conviction for violating CRST Tribal Code § 58-1-7 (Abuse of Elderly or Disabled Adult Constituting an Assault). Doc. 9-1 at 8. Following the conviction, in June 2024, the Tribal Court entered a Final Order Suspending Imposition of Sentence in which it placed Rousseau on probation for a period of one year for the offense. Doc. 64-2. In the petition,

Rousseau, among other things, contested issues with the underlying trial and the delay in the appellate court in reviewing the conviction on appeal. See Doc. 9-1 at 9, 24–30. The petition also detailed hardships that Rousseau encountered due to his original, underlying tribal conviction for Abuse of an Elderly or Disabled Adult Constituting an Assault. Id. at 17. Rousseau invoked federal jurisdiction under the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1303. Id. at 3.

Following the dismissal of his non-habeas claims, Respondents moved to stay the case to allow the CRST Court of Appeals to issue a dispositive order on Rousseau's pending appeal. Doc. 37. Judge Moreno granted the stay as he was "[s]atisfied that Rousseau's direct appeal is on a steady course toward resolution" and reasoned "the appeal may moot some issues." Doc. 39 at 2. On December 30, 2025, the CRST Court of Appeals issued a Memorandum Opinion determining the evidence was insufficient to convict Rousseau of the aggravated assault and directing the trial court to modify the judgment to a conviction for simple assault. Doc. 48-1. On January 27, 2026, the Respondents filed a supplemental status report, Doc. 53, providing the Amended Order and Judgment of Sentence entered by the Tribal Court, which reduced Rousseau's conviction to simple assault and noted that "Rousseau's probationary sentence previously Ordered by the Court is completed, and the Court is not imposing any additional terms and conditions of his sentence that were not otherwise previously Ordered, this matter is henceforth completed," Doc. 53-2.

Given that the tribal court Amended Order and Judgment of Sentence would appear to end both Rousseau's criminal case and in turn any possible habeas relief this Court could grant, see 25 U.S.C. § 1303; Scudero v. Moran, 230 F. Supp. 3d 980 (D. Alaska 2017), this Court denied the Respondents' motion for more definite statement as moot, and consistent with Judge Moreno's directive, ordered Rousseau to file a response advising this Court if he wished to proceed with this case. Doc. 54. If Rousseau did wish to proceed, this Court advised that he needed to file a motion

to amend and a proposed, amended habeas petition showing that he is in detention under the amended conviction for simple assault. Id.

Rousseau moved to amend his petition and attached an amended petition and exhibits. Doc. 55. Rousseau asserts that he has restraints imposed on his liberty by the amended conviction, which qualify him as "in detention" under § 1303 on the judgment following the exhaustion of his tribal court remedies. See id. at 1–8. These restraints on liberty primarily relate to incidents predating the CRST Court of Appeals' ruling reducing Rousseau's crime of conviction to simple assault, although a few allegations concern events following the appellate decision. See id.; id. at 3 (citing Scudero, 230 F. Supp. 3d 980). Focusing on the allegations related to conduct following the December 2025 appellate decision,[3] Rousseau maintains that the conviction for simple assault affects his "employment, licensing, federal background checks, eligibility for tribal office, reputation, and civil rights," including his ability to join law enforcement or continue his military career. Id. at 2–3, 5–6. Additionally, Rousseau asserts the CRST and local media have not

---

[3] As this Court is reviewing the ability of Rousseau to bring a habeas petition to collaterally attack his underlying tribal conviction, which has been amended to a simple assault conviction following the exhaustion of his tribal court remedies, this Court will only consider collateral consequences offered by Rousseau that are traceable to the simple assault conviction. See Chegup v. Ute Indian Tribe of Uintah and Ouray Rsrv., 28 F.4th 1051, 1061–62 (10th Cir. 2022) (holding district court erred in ruling on whether ICRA claim involved detention before dismissing for failure to exhaust); Alvarez v. Lopez, 835 F.3d 1024, 1027 (9th Cir. 2016) ("We may not exercise jurisdiction over a habeas petition presenting ICRA claims unless the petitioner has first exhausted his tribal remedies."); Cossio v. Air Force Ct. of Crim. Appeals, 129 F.4th 1013, 1017, 1020–21 (7th Cir. 2025); Wright v. Alaska, 47 F.4th 954, 958–61 (9th Cir. 2022); Evans v. Birkett, No. 10-14787, 2012 WL 86800, at *2–3 (E.D. Mich. Jan. 11, 2012).

Rousseau's allegations include multiple collateral consequences predating the CRST Court of Appeals decision and trial court's subsequent amended judgment, such as his law school application rejection, the separate tribal criminal case initiated in November 2025, the underlying civil litigation concerning his family business and his father's guardianship, his removal from tribal office, the Withdrawal of Federal Recognition issued by the National Guard, and the initiation of removal proceedings at his nursing program. See Docs. 55, 55-1. See also Doc. 69-1.

4

corrected their pre-December 2025 publications, which had announced Rousseau's original offense. Id. at 3. Rousseau notes that the United States Army Inspector General's January 2026 written determination further demonstrates the remaining "in detention" requirement, although that determination refers to the original conviction of abuse and not the amended judgment on simple assault. Id. at 5; Doc. 55-1 at 111. Rousseau contends that the conviction was created "ultra vires" by the CRST Court of Appeals and "[w]ithout federal habeas relief, [he] remains forever wrongfully convicted." Doc. 55 at 9.

In response, Respondents Craven and Claymore argue that the motion to amend should be denied because the proposed amended petition does not comply with the Rules Governing Section 2554 cases or the Federal Rules of Civil Procedure, seeks to add non-habeas claims and inappropriate respondents, challenges actions that are the subject of a separate pending habeas petition before this Court, "contains an excessive amount of extraneous and superfluous material," and misrepresents the law. Doc. 63. Respondents also filed a motion to dismiss and argue that as "Rousseau was not subject to 'detention by order an Indian tribe' or under any form of detention or active restraint on his liberty" when he filed the proposed amended petition addressing the simple assault conviction, this Court is without jurisdiction over Rousseau's amended petition under 25 U.S.C. § 1303. Doc. 64. In response, Rousseau moved to strike Respondents' motion to dismiss as "untimely, unauthorized, and noncompliant with the Court's February 6 and March 10 orders." Doc. 65 at 1.

On March 24, 2026, Magistrate Judge Moreno issued a Report and Recommendation to dismiss the habeas petition because the reduced conviction did not result in a "detention" under § 1303 sufficient to invoke federal habeas jurisdiction and the relief Rousseau seeks cannot be

granted. Doc. 68. Rousseau has objected to the Report and Recommendation on multiple grounds. Doc. 69.

## II.   Standard of Review

### A.  Report and Recommendation

This Court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's report and recommendation, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

### B.  Motion to Dismiss

The Respondents move to dismiss the petition for lack of subject matter jurisdiction. Doc. 64. As a general matter, the Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with specific habeas corpus rules. Banister v. Davis, 590 U.S. 504, 511 (2020) (citing Fed. R. Civ. P. 81(a)(4)). This includes Rule 12 of the Federal Rules of Civil Procedure. Ebert v. Clarke, 320 F. Supp. 2d 902, 909 (D. Neb. 2004) (collecting cases); Hemsher v. United States, No. 4:19-CV-04172, 2020 WL 4719985, at *7 (D.S.D. Feb. 10, 2020), report and recommendation adopted as modified, 2020 WL 2092896 (D.S.D. May 1, 2020); Franklin v. Dooley, 4:15-CV-04149, 2015 WL 9608750, at *1 (D.S.D. Nov. 23, 2015), report and recommendation adopted, 2016 WL 67695 (D.S.D. Jan. 5, 2016).

A Rule 12(b)(1) challenge to subject-matter jurisdiction can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject-matter

6

jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). A facial challenge to federal jurisdiction limits the court; the court must view the allegations in the light most favorable to the plaintiff. See Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In a factual challenge, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730 (quoting Mortensen, 549 F.2d at 891).

The Respondents' arguments arguably are a facial attack on this Court's jurisdiction because the Respondents argue that even Rousseau's allegations of collateral consequences are

7

insufficient to establish jurisdiction under 25 U.S.C. § 1303. See Nygaard, 563 F. Supp. 3d at 1010–11 (reviewing what standard to apply where the tribal defendants did not dispute the petitioner's allegations in their jurisdictional challenge but the court also took judicial notice of tribal court records) (citing United Keetoowah Band of Cherokee Indians in Okla. v. Barteaux, 527 F. Supp. 3d 1309, 1317–18 (N.D. Okla. 2020) (determining that defendant's motion to dismiss presented a facial challenge to the court's jurisdiction because the defendant argued that the facts as alleged in the petition did not amount to "detention" within the meaning of § 1303)). However, the Respondents attach four tribal court records to their motion, therefore, this Court has taken judicial notice of some matters outside of the petition and its attachments and reviews the Respondents' motion as a factual attack.[4] See Doc. 64-1, 64-2, 64-3, 64-4; Fed. R. Evid. 201(b)(2), (c)(1).

Rule 12(b)(6) permits dismissal for failure to state a claim on which relief can be granted. On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is

---

[4] Although Rousseau disputes the timeliness of the motion to dismiss and the legality of the CRST Court of Appeals' and trial court's actions, he does not dispute the accuracy of the records attached to the motion to dismiss. See Doc. 65. In addition, the contents of those tribal court records are referred to by Rousseau in his motion to amend and his proposed amended petition. See Doc. 55.

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal quotation marks omitted).

## III. Discussion

Rousseau seeks habeas corpus relief under 25 U.S.C. § 1303. Doc. 9-1; see also Doc. 55-1 (proposed amended petition). Respondents move to dismiss for lack of subject matter jurisdiction. Doc. 64. "[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). District courts have jurisdiction to hear "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Merely identifying a federal issue is not enough to confer federal jurisdiction; the right being enforced must arise from federal law. Cagle v. NHC Healthcare-Maryland Heights, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023). A federal court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). When a court lacks jurisdiction, the case must be dismissed. See Robins v. Ritchie, 631 F.3d 919, 924 (8th Cir. 2011); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Rousseau brings this action under 25 U.S.C. § 1303, the habeas corpus provision of the ICRA. Under § 1303, the "privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."

9

Before hearing a habeas petition under the Indian Civil Rights Act, a court must first determine (1) whether the petitioner has exhausted their tribal remedies and (2) whether the petitioner is in "detention" under § 1303. 1 <u>Cohen's Handbook of Federal Indian Law</u> § 11.08 (2026); <u>see also</u> <u>Nygaard</u>, 563 F. Supp. 3d at 1011–18; <u>Chegup</u>, 28 F.4th at 1061–62 (holding district court erred in ruling on whether ICRA claim involved detention before dismissing for failure to exhaust); <u>Alvarez v. Lopez</u>, 835 F.3d 1024, 1027 (9th Cir. 2016) ("We may not exercise jurisdiction over a habeas petition presenting ICRA claims unless the petitioner has first exhausted his tribal remedies."). This Court reviews de novo Rousseau's objections to dispositive matters in Judge Moreno's Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

### A. Exhaustion of Tribal Court Remedies

The tribal exhaustion doctrine recognizes that tribal courts are an important part of tribal sovereignty and self-determination. <u>Iowa Mut. Ins. Co. v. LaPlante</u>, 480 U.S. 9, 14–18 (1987); <u>Nat'l Farmers Union Ins. v. Crow Tribe of Indians</u>, 471 U.S. 845, 856 (1985); <u>Ninigret Dev. Corp.</u> <u>v. Narragansett Indian Wetuomuck Hous. Auth.</u>, 207 F.3d 21, 33 (1st Cir. 2000) (explaining that the concern for tribal sovereignty "forms the epicenter of the tribal exhaustion doctrine"); <u>Kerr-McGee Corp. v. Farley</u>, 115 F.3d 1498, 1507 (10th Cir. 1997) ("The tribal exhaustion requirement created by <u>National Farmers</u> is based on comity concerns for Indian tribes in maintaining their remaining sovereignty."). This doctrine requires litigants, in certain circumstances, to exhaust their remedies in tribal court before coming to federal court. <u>Iowa Mut. Ins.</u>, 480 U.S. at 16–18; <u>DISH Network Serv. LLC v. Laducer</u>, 725 F.3d 877, 882–83 (8th Cir. 2013); <u>Chegup</u>, 28 F.4th at 1061; <u>Janis v. Wilson</u>, 521 F.2d 724, 726–27 (8th Cir. 1975). The doctrine thus allows tribal courts to assert authority over reservation affairs without having to "compete" against federal courts for

the right to do so. Iowa Mut. Ins., 480 U.S. at 16; Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Rsrv., 27 F.3d 1294, 1299 (8th Cir. 1994).

Exhaustion "assist[s] in the orderly administration of justice, provid[es] federal courts with the benefit of tribal expertise, and clarif[ies] the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." Colombe v. Rosebud Sioux Tribe, 747 F.3d 1020, 1024 (8th Cir. 2014) (citation omitted). "[E]xhaustion of tribal court remedies 'means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.'" WPX Energy Williston, LLC v. Jones, 72 F.4th 834, 837 (8th Cir. 2023) (quoting Iowa Mut. Ins., 480 U.S. at 17); see also Colombe, 747 F.3d at 1024. Exhaustion of tribal remedies may be excused as futile in rare cases, such as where there is no functioning court. Krempel v. Prairie Island Indian Cmty., 125 F.3d 621, 622 (8th Cir. 1997) (explaining that exhaustion is not required where there is no functioning tribal court); Johnson v. Gila River Indian Cmty., 174 F.3d 1032, 1036 (9th Cir. 1999) (questioning whether there was a functioning tribal appellate court when there was no response to the initial appellate proceedings in two years); see also Carter v. Buesgen, 10 F.4th 715, 716, 723 (7th Cir. 2021) (holding that four years of inaction by state court of appeals excused exhaustion requirement for a habeas petitioner).

The CRST's Tribal Constitution establishes tribal courts, consisting of a trial court and an appellate court, "for the adjudication of claims or disputes arising among or affecting the Cheyenne River Sioux Tribe," CRST Const. art. IV, § 1(k), and the CRST By-Laws provide that, "[t]he tribal courts shall have jurisdiction over claims and disputes arising on the reservation," CRST By-Laws, art. V § 1(c). Judge Moreno previously stayed this petition until the CRST Court of Appeals ruled on Rousseau's pending appeal of his underlying criminal case. Doc. 39 at 2. As the CRST Court of Appeals has now issued a ruling, and the CRST trial court has subsequently issued an

11

amended judgment, Rousseau has exhausted his tribal remedies, and this Court may now review whether Rousseau is in "detention" on the ultimate conviction of simple assault. Chegup, 28 F.4th at 1061–62.

## B. Detention

To invoke a federal court's jurisdiction under § 1303, the petitioner must demonstrate "a severe actual or potential restraint on liberty." Jeffredo, 599 F.3d at 919; Poodry, 85 F.3d at 880; Stymiest, 2014 WL 1165925, at *2. This does not necessarily mean that the petitioner must show he or she is in actual physical custody. "It is well established that actual *physical* custody is not a jurisdictional prerequisite for federal habeas review." Poodry, 85 F.3d at 893. The "custody requirement is simply designed to limit the availability of habeas review 'to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.'" Id. at 894 (quoting Hensley v. Mun. Ct., 411 U.S. 345, 351 (1973)); see also Crescenzi v. Sup. Ct. of State of N.Y., 749 F. Supp. 552, 555 (S.D.N.Y. 1990) ("Petitioner will not be able to satisfy the 'in custody' requirement in a subsequent habeas action challenging the contempt finding. That circumstance, however, does not justify the retention of habeas corpus jurisdiction."). Thus, in determining whether a petitioner has satisfied the jurisdictional prerequisites for habeas review, this Court must consider the severity of the alleged restraint. Poodry, 85 F.3d at 894.[5]

---

[5] This Court is mindful of the ICRA's legislative history, as "[o]riginally, the legislation would have authorized *de novo* review in federal court of all convictions obtained in tribal courts," but "[a]fter considering numerous alternatives for review of tribal convictions, Congress apparently decided that review by way of habeas corpus would adequately protect the individual interests at stake while avoiding unnecessary intrusions on tribal governments." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 67 (1978). See also Poodry, 85 F.3d at 883 ("During the 1965 subcommittee hearings, various tribes, attorneys specializing in Indian affairs, and the Department of the Interior opposed both S. 961's wholesale application of constitutional restraints to Indian

Cases involving habeas corpus relief under 28 U.S.C. § 2254, which is applicable by analogy to actions under 25 U.S.C. § 1303, guide a court's determination of the severity of the alleged restraint. Id. at 892; Weatherwax on Behalf of Carlson v. Fairbanks, 619 F. Supp. 294, 296 n.2 (D. Mont. 1985); see also DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 515 (8th Cir. 1989) (looking to caselaw examining 28 U.S.C. § 2254 to guide its analysis under 25 U.S.C. § 1303). Under 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

For example, in Hensley, recognizing habeas corpus as "an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism," the Supreme Court determined the petitioner was experiencing a qualifying restraint on his liberty by reviewing (1) how the petitioner was "subject to restraints not shared by the public generally," and could not "come and go as he please[d]"; (2) the petitioner's future "incarceration [was] not . . . a speculative possibility that depends on a number of contingencies over which he ha[d] no control," rather the "authorities retain[ed] the determination and the power to seize him as soon as the obstacle of the stay [was] removed"; and (3) that the decision did not interfere with any significant interest of the state because a decision that the petitioner was not in custody now only delayed the habeas corpus action until he began to serve his pending sentence. 411 U.S. at 351–53; see also Poodry, 85 F.3d at 894 (citing Hensley, 411 U.S. at 351 to determine "detention" in the § 1303 context). In another case where the Supreme Court explored the types of restraints that could

---

tribes and S. 962's prospect of a trial *de novo* in federal district court for anyone convicted in a tribal court.").

qualify as "custody" for a habeas corpus action, the Court explicitly distinguished cases where "the petitioner had been completely and unconditionally released from custody" from the case at issue there, where the petitioner "ha[d] not been unconditionally released." Jones v. Cunningham, 371 U.S. 236, 241 (1963). See also Crescenzi, 749 F. Supp. at 555 ("It follows that the writ is not designed to assure petitioner of a federal forum for collateral attack upon his conviction where the exhaustion of state remedies does not take place until after he has been released from custody."). Finally, in the § 2254 context, for a petitioner to allege that he is still in "custody" due to the other restraints on liberty, those restraints must be traceable to the underlying challenged conviction. See Wright, 47 F.4th at 958–61; Evans, 2012 WL 86800, at *3; see also Cossio, 129 F.4th at 1017, 1020–21 (affirming the dismissal of a 28 U.S.C. § 2241 petition because "[t]o meet the custody requirement of federal habeas, the consequences of [the] conviction must be direct").

It is undisputed that Rousseau is not detained in any way on the tribal court conviction for simple assault; the tribal court extended no additional sentence on Rousseau. See Doc. 64-4. He is under no form of tribal court custody, probation, or supervision. See id. "Generally, service of a sentence makes habeas relief moot, divesting the district court of subject matter jurisdiction to decide the claim on its merits." Stymiest, 2014 WL 1165925, at *3.

However, a petition brought under § 1303 may not be moot if, due to the tribal court conviction, the petitioner suffers other consequences that are cognizable as a form of detention, in other words, "whether disabilities or burdens flow from petitioner's conviction such that he has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." Id. (cleaned up and citations omitted). Nevertheless, "a petition for a writ of habeas corpus [under § 1303] cannot be used to challenge a conviction that resulted only in a cash fine or a short-lived suspension of privileges, or the collateral consequences of a conviction where

14

the petition is filed after the expiration of the challenged sentence." Poodry, 85 F.3d at 894 (collecting cases). For example, courts have concluded that petitioners have failed to show they were in "detention" for the purposes of establishing ICRA jurisdiction when alleging adverse employment consequences, education-related consequences, loss of reputation, retaliation, or loss of income and benefits. See, e.g., Shenandoah v. U.S. Dep't of Interior, 159 F.3d 708, 714 (2d Cir. 1998) (concluding petitioners had not demonstrated a severe or actual restraint on their liberty where they were allegedly suspended or terminated from their employment, lost their voices in tribal government, denied admittance to tribal health center, lost quarterly distributions to all tribal members, banned from various businesses and recreational facilities, stricken from membership rolls, prohibited from speaking with other members, not sent tribal mailing, and experienced retaliatory violence from a member); Tavares v. Whitehouse, 851 F.3d 863, 868, 870, 877 (9th Cir. 2017) (concluding withholding tribal distributions, benefits, and member privileges as well as temporary exclusion orders were insufficient to qualify as "detention"); Shenandoah v. Halbritter, 366 F.3d 89, 90, 92 (2d Cir. 2004) (noting the "general rule" that "federal habeas jurisdiction does not operate to remedy economic restraints" and affirming district court's conclusion that retaliation was not sufficient); LaRose v. U.S. Dep't of Interior, 659 F. Supp. 3d 996, 1004 (D. Minn. 2023) (concluding petitioner had not demonstrated a severe or actual restraint when barred from running for tribal offices); Jeffredo, 599 F.3d at 919 (concluding no access to facilities, including inability of children to attend school, did not rise to a severe restraint on liberty).

Respondents argue that Rousseau is not "detained" because the tribal court did not impose any kind of sentence or fine following the entry of the simple assault conviction and Rousseau's alleged restraints do not qualify as "detention," and therefore, this Court lacks jurisdiction over the petition under § 1303. Doc. 64. Rousseau did not respond to the motion to dismiss, instead moving

15

to strike the motion as untimely. Doc. 65. However, Rousseau also filed a Supplemental Notice Regarding Jurisdictional Defect and Continuing Restraints, arguing that this Court retains jurisdiction under § 1303 because "the restraints at issue arise from an ultra vires appellate action and a void amended judgment." Doc. 67 at 6.

In his Report and Recommendation, Judge Moreno concluded that Rousseau was not under a sufficient liberty restraint to justify federal subject matter jurisdiction. Doc. 68 at 10. Specifically, Judge Moreno concluded that Rousseau's allegations of severe liberty restraints were not traceable to his amended conviction for simple assault, id. at 10–11, and that even his claimed restraints, traceable to the first conviction (now overturned) based on alleged retaliation, adverse employment actions, loss of income and benefits, purported career and educational consequences, and reputation damage, were insufficient to trigger ICRA jurisdiction, id. at 8–9. Further, Judge Moreno concluded that Rousseau's ultra vires and due process contentions are not "restraints" because nothing unlawful occurred when the CRST Court of Appeals reviewed and amended his conviction, there was no jurisdictional defect or lapse in authority, and the relief Rousseau requests is not permitted as this Court may not vacate his conviction or award him the non-habeas relief he asks for. Id. at 9–13. Finally, Judge Moreno concluded the motion to dismiss was not untimely, unauthorized, or noncompliant with court orders. Id. at 14–15.

Rousseau now objects and argues that the Report and Recommendation misstated the procedural posture of the case, misstates the law, ignores restraints arising from his overturned elder abuse conviction, errs in focusing on restraints related to the simple assault conviction ("a later, void judgment"), incorrectly asserts that the due process violations are not restraints, incorrectly asserts the appellate court was authorized to direct the trial court to enter an amended judgment, and errs in concluding the motion to dismiss was permissible. Doc. 69. Rousseau

maintains that he can establish detention pursuant to § 1303 under <u>Carafas v. LaVallee</u>, 391 U.S. 234 (1968), because of restraints on his liberty arising from the original elder abuse conviction, and "the amended conviction is void because jurisdiction expired after the SIS period ended, the appellate court admitted it lacked authority to modify the conviction, and no tribal law authorizes post-expiration modification." <u>Id.</u> at 26.

Rousseau's objections are overruled. First, <u>Carafas</u> concerned the habeas petition of a petitioner who was released from custody while his petition was pending, and the Supreme Court concluded that the petition could be heard on the merits given his collateral consequences that kept that petition ripe. <u>See</u> 391 U.S. at 237–40. However, in that case, the petitioner had already exhausted his state remedies when he filed his petition, and the final conviction he challenged remained the same even after his release from custody, unlike here, where Rousseau filed his petition before the exhaustion of his tribal remedies and before his conviction was final. <u>See</u> <u>id.</u> at 235–36. The simple assault conviction has replaced the elder abuse conviction initially referred to in the underlying, earlier petition because, as contemplated by the exhaustion doctrine, the CRST Court of Appeals took action that changed the ultimate conviction now before this Court. Second, as this Court has observed in multiple opinions, the CRST has a functioning appellate court, and therefore, the simple assault conviction is not void, and the appellate court did not lack authority to modify the conviction that Rousseau appealed. <u>See</u> CRST Const. art. IV, § 1(k); CRST By-Laws, Art. V § 1(c). That simple assault conviction is the only conviction remaining for Rousseau to challenge, and therefore, this Court must look to the restraints on liberty that are traceable to that simple assault conviction to determine if it has jurisdiction over this case under § 1303.

Judge Moreno did not misstate the law as Rousseau contends in his objections. See Doc. 69. Judge Moreno properly concluded that Rousseau's alleged restraints are not sufficient to trigger detention as the economic, educational, and reputational consequences described do not amount to "detention" under § 1303. See Poodry, 85 F.3d at 894; Shenandoah, 159 F.3d at 714; Tavares, 851 F.3d at 868, 870, 877; Shenandoah, 366 F.3d at 90, 92; LaRose, 659 F. Supp. 3d at 1004; Jeffredo, 599 F.3d at 919. To conclude otherwise, especially where Rousseau has "been completely and unconditionally released from custody," Jones, 371 U.S. at 241, as he has successfully completed his probationary period and no additional sentence was imposed on the simple assault conviction, Doc. 64-4, would risk an "unnecessary intrusions on tribal government[]." Santa Clara Pueblo, 436 U.S. at 67.

The proposed amended petition does not cure this jurisdictional defect. See Am. Ins. Co. v. St. Jude Med., Inc., 597 F. Supp. 2d 973, 979 (D. Minn. 2009) ("Amendment is futile if the proposed amended complaint does not establish a court's subject matter jurisdiction over the action."). Therefore, this Court dismisses Rousseau's petition for lack of subject matter jurisdiction and denies Rousseau's motion to amend as futile.

## IV.   Conclusion

For the foregoing reasons, it is hereby

ORDERED that the Report and Recommendation, Doc. 68, is adopted. It is further

ORDERED that Rousseau's objections to the Report and Recommendation, Doc. 69, are overruled. It is further

ORDERED that the Motion to Amend, Doc. 55, is denied. It is further

ORDERED that the Motion to Dismiss, Doc. 64, is granted. It is further

ORDERED that the Motion to Strike, Doc. 65, is denied. It is finally

18

ORDERED that the Second Amended Petition, Doc. 9-1, is dismissed for lack of subject matter jurisdiction without prejudice.

DATED this _27th_ day of May, 2026.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE

19